## CIRCUIT COURT OF THE CITY OF ALEXANDRIA

Federal Insurance Co.

v.

The Partnership Umbrella
and Steven Paulachak

March 24, 1997

Case No. (Law) CL960228

BY JUDGE THOMAS A. FORTKORT

The plaintiff in this action for declaratory judgment is Federal Insurance Company (hereafter referred to as "Federal"). The defendants are The Partnership Umbrella (hereafter referred to as "PUI") and Steven Paulachak. Federal issued an executive liability and indemnification policy to PUI. The policy required Federal to provide coverage for certain "wrongful acts" committed by PUI officers and directors. The policy contained two exclusionary provisions: (1) Federal would not be liable for loss in connection with any claims brought about or contributed to by the dishonesty of the insured if *judgment* or *other final adjudication* adverse to such insured establishes that acts of active and deliberate dishonesty were committed or attempted by the insured with actual dishonest purpose and intent and were material to the cause of the action and (2) Federal would not be liable to pay any loss arising from a claim against an officer or director based upon or attributable to the officer or director having gained any personal profit or advantage to which he was not legally entitled. Paulachak, a PUI officer, was investigated and then indicted on thirty-five counts of alleged criminal activity by a Grand Jury sitting in the U. S. District Court for the Eastern District of Virginia. Twenty-seven counts resulted in either a dismissal or an acquittal, and the other eight resulted in convictions. Paulachak was sentenced by the U. S. District Court and is currently in a federal prison. Federal has instituted this

action against PUI and Paulachak seeking a declaratory judgment that it is not liable under the policy it issued.

PUI filed a counterclaim. In consideration of PUI's payment of an agreed premium to Federal, Federal issued to PUI a policy whereby Federal covenanted to provide executive liability and indemnification insurance. The policy is a "claims made" policy. It covered claims made during the period from October 1, 1991, through October 1, 1992. The policy defines the "Insured Organization" as PUI and the "Insured person" as any PUI director or officer. The policy provides coverage under two insuring clauses: (a) Insuring Clause 2 provides that Federal "shall pay on behalf of the Insured Organization all Loss for which the Insured Organization grants indemnification to each Insured Person, *as permitted by law* ... ." and (b) Insuring Clause 1 provides that Federal "shall pay on behalf of ... the Insured Persons all Loss for which the Insured Person *is not indemnified* by the Insured Organization and which the Insured Person becomes legally obligated to pay ... ." The policy defined "Loss" as the "total amount which any Insured Person(s) becomes *legally obligated to pay on account of each claim* ... for Wrongful Acts for which coverage applies, including ... damages, judgments, settlements, costs and Defense Costs." "Defense costs" include "expenses ... incurred in defending, investigating or monitoring legal actions, claims or proceedings ... ." "Wrongful Act" is defined by the policy as "any ... act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted, by any Insured Person, individually or otherwise in his Insured Capacity ... . All such causally connected ... acts ... shall be deemed interrelated Wrongful Acts."

Paulachak served as president for PUI during the relevant period and therefore qualifies as an insured person. Paulachak retained counsel when he became the subject of investigation by the government. PUI gave notice to Federal's insurance agent of legal fees and expenses that may be incurred by Paulachak. PUI requested Federal's opinion of coverage. Several times throughout the investigation, PUI sent letters to Federal requesting coverage for Paulachak. Each time, Federal denied coverage on the grounds that no "claim" had been made on Paulachak for a wrongful act under the policy. On September 14, 1994, Paulachak was indicted on thirty-five counts. Twenty-three of the original thirty-five counts were redacted, and of the remaining twelve, he was convicted of eight. The Board of PUI indemnified Paulachak a portion of the fees and expenses related to his representation from May 3, 1994 (the date Paulachak received a letter notifying him that he was the target of the investigation) through any appeal.

On March 18, 1996, Federal refused coverage for any costs incurred by Paulachak at any time relating to the criminal charges, including costs incurred in defending the twenty-seven counts on which Paulachak was acquitted. Paulachak incurred in excess of approximately $165,000.00 for the costs of his representation through the date of the "target" letter. PUI paid these amounts pursuant to Va. Code § 13.1-878. Thus far, Paulachak has incurred over $1,000,000.00 in post-target letter defense costs. PUI has indemnified Paulachak for a portion of these costs. PUI claims that this amount falls under the definition of "Loss" under the policy. All necessary conditions to Federal's duty to pay have been satisfied. Federal has wrongfully withheld coverage to PUI under the terms of the policy.

### Rulings of Law

Today's hearing deals with two issues of law. The parties agreed to stay the proceedings until the court had an opportunity to rule on these two issues. The issues are as follows.

1. If PUI cannot recover under Insuring Clause 2 because of a determination that its indemnification of Paulachak was not "as permitted ... by law," may PUI recover under Insuring Clause 1 either the amounts it has paid for Paulachak's defense or the amounts Paulachak was "legally obligated to pay?"

2. Can Federal argue to the jury in this case, based on the substantive merits of PUI's decision to indemnify Paulachak, that the indemnification did not meet the statutory standards governing indemnification (including those attorney's fees for counts on which Paulachak was not convicted)?

### Law and Analysis

### Question 1

This question deals with the interpretation of Clause 1 of the insurance contract. Both parties agree that the Clause covers only situations where an officer has not been indemnified by the company. The argument is over what "indemnify" means in this context. Federal argues that indemnity is a single decision. When the company decides to indemnify, it is bound by that decision. Federal argues that once the decision is made to indemnify, coverage cannot be had under Clause 1, even if the decision to indemnify was illegal and repayment is later sought from Paulachak.

PUI argues that indemnification is determined by the conditions existing at trial. PUI looks to what the ultimate obligations of the parties will be. If the company ends up seeking repayment from Paulachak for improperly indemnifying him, then there is no indemnification under the terms of the policy. Thus, Clause 1 would apply after indemnification is voided.

There is no case law discussing indemnification in this context. The best approach to this problem is to determine the coverage of the contract. The contract places the two clauses at issue next to each other. They are entitled "Executive Liability" (Clause 1) and "Executive Indemnification" (Clause 2). These titles and the fact that they are set out together suggest that the purpose of the contract was to provide coverage to *whomever* was paying the bill for the losses incurred. Thus, coverage should be had under one of the two clauses (providing that none of the exceptions limiting coverage apply). This intent suggests that whether indemnification has occurred must be read as of the end of the case. Thus, if the court finds that the indemnification was wrongful and sets it aside, the company may be able to bring its claim under Clause 1.

The alternative way of reading the policy is to assume that the parties were not attempting to provide total coverage. Coverage was designed to exist only where (1) indemnification took place and was proper or (2) where no indemnification ever took place. Under this reading of the policy, coverage was specifically excluded where the company made a mistake and improperly decided to indemnify the officer. If this had been the intent, it would have been easy to require the party to elect coverage under Clause 1 or 2. The policy does not have such an election; in fact, it recognizes that the coverage of Clauses 1 and 2 could overlap in § 5.5 of the contract, which sets the maximum deductible for claims occurring in part under 1 and in part under 2. This suggests that the coverage provided in each clause was meant to be complimentary rather than exclusive. Furthermore, if Federal had intended to exclude situations where the indemnification decision would later be legally changed, it could have incorporated this exclusion into the policy. Its failure to do so supports PUI's reading of the policy.

Assuming that the reading favorable to PUI is adopted and coverage exists under Clause 1 where indemnification was unlawful (barring coverage under Clause 2), the next question is whether PUI can recover the fees it has already paid. The terms of Clause 1 provide that the officer or director will be paid by Federal. Federal argues that only Paulachak, the officer, can recover against Federal under Clause 1. PUI argues that it has a vested interest in the policy and is a subrogee of Paulachak's rights because it paid some of the amounts owed by Paulachak. PUI argues that it is a promisee in the insurance contract

and that this gives it the right to recover under Clause 1. Clause 1 provides that Federal is obligated to pay "on behalf of each Insured Person" the losses for which they become liable. It does not state who can enforce this provision. The general rule is that a promisee (PUI) can enforce a contract even where the contract is made for the benefit of a third party (Paulachak). Am. Jur., *Contracts*, § 426. Thus, PUI can maintain this action against Federal, at least for the monies still owed.

PUI also argues that it is entitled to enforce the contract to recover fees already paid under a theory of equitable subrogation. Virginia recognizes the doctrine of equitable subrogation. *Federal Land Bank v. Joynes*, 179 Va. 394 (1942). The principal purpose of the doctrine is to secure the ultimate discharge of a debt by the party who ought in equity to pay it, notwithstanding the technical failure to take an assignment. *Id*. In this case, assuming that there is coverage under Clause 1, Federal is the debtor, and PUI stands in the shoes of Paulachak under the doctrine of equitable subrogation. Virginia courts have not addressed equitable subrogation in the context at bar, but the Fourth Circuit, relying on Virginia law, has recognized the doctrine in this context. *See, Atlantic Perm. Fed. Savings & Loan v. American Cas. Co.*, 839 F.2d 212 (4th Cir. 1988). In *Atlantic*, the court held that unclean hands of the directors and officers would not bar recovery by the company against the insurer under equitable subrogation. *Id*. The court noted that it would be manifestly unjust to allow the insurer not to pay the company when it had been well compensated for the policies, given Virginia's strong policy favoring liberal application of equitable subrogation. *Id*. Under either of the above theories, PUI could recover against Federal under the insurance policy if coverage exists under Clause 1.

The court rejects Federal's argument that the language "for which the insured is not indemnified by the Insured Organization" eliminates the common law right of subrogation. The court finds that this language is merely designed to prevent double recovery. Under the normal rules of contract construction, if the insurer desired to rid itself of the common law right of subrogation, it should have expressly stated so.

However, we do reach the same point urged by Federal through the use of this language. Since PUI under Virginia subrogation rulings steps into the shoes of the subrogee, it cannot collect for that portion of the expenses which it has already paid since it is limited to Paulachak's right of recovery. *See United Services v. Nationwide Mutual*, 218 Va. 861, 241 S.E.2d 748 (1978); *Erie Ins. Exch. v. Meeks*, 223 Va. 287, 288 S.E.2d 454 (1982). Therefore, when PUI steps into the shoes of its officer Paulachak, it can only recover for those expenses not previously indemnified under this clause since its

subrogation rights are limited by the language "for which the insured is not indemnified."

We find that under any theory advanced by the defendant, it can only recover that portion of the expenses which it has not indemnified Paulachak.

## Question 2

PUI claims that Va. Code § 13.1-870 applies to this case, not § 13.1-876. Va. Code § 13.1-870 is a codification of the "business judgment rule." PUI contends that applying the business judgment rule to this case limits the scope of the inquiry on whether indemnification was permitted under Virginia law to whether the proper procedures for the indemnification decision were met.

The bottom line of this issue is who decides whether the substantive decision to indemnify comports with the statutory requirements for lawful indemnification. PUI argues that the Board of Directors decides this issue. PUI claims that the Business Judgment Rule prevents the court, parties, etc., from delving into the substance of the decision to indemnify Paulachak. Effectively, PUI is therefore arguing that the decision by the Board is never subject to judicial review. The statutes dealing with indemnification suggest the exact opposite. They set out when indemnification may occur, when it must occur, and when it may not occur. The language is mandatory. It would be counter intuitive to argue that although the company *may not* indemnify under certain circumstances, it is held harmless for deciding to do so anyway. Companies could ignore the requirements of the statute with impunity. This cannot be the intent of the statutes. For the statutes to be enforced, the decision to indemnify must be subject to review by the courts. Therefore, evidence must be allowed to be introduced to allow the finder of fact to determine whether the requirements of the statute have been met.

Federal has the better of the two arguments. On its face, § 13.1-870 is entitled "general standards for conduct of directors." It is not directed at the propriety of a decision of a corporation to indemnify a director. Rather, it sets up the standards to which a director is held in performing his duties. The main allegation in this case is that the *corporation* agreed to indemnify Paulachak in circumstances where indemnification would not be permissible under Virginia law. What occurred at the meeting where the decision to indemnify was made is relevant to determining whether the corporation followed the requirements of the statute setting out when indemnification is allowed.

We conclude that defendant PUI's rights under the contract under Clause I are limited to the amounts of money for attorney's fees which are due and

owing but not yet paid. The amounts which PUI indemnified Paulachak cannot be reached under Clause I for the reasons stated.

Indemnification of PUI by Federal for the amounts PUI expended on Paulachak's legal fees will be governed by the statutory standards relating to indemnification.